## GROLLMAN v. ALEXANDER et al.*
### (No. 1895.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 25, 1922. Rehearing Denied Feb. 22, 1922.)

**1. Brokers ⬠71 — Contract to compensate broker by difference between agreed price and purchase price is valid.**

An agreement between parties competent to contract that the principal should pay the broker a stipulated price for the land he desired to obtain and that the broker should have as compensation for his services the difference between that price and the price at which he might be able to purchase it is valid.

**2. Brokers ⬠71—Notes to brokers for the amount of compensation agreed to held amply sustained by consideration.**

Where defendant contracted with the owner for purchase of oil royalties, but a dispute between them resulted in a suit pending when defendant authorized plaintiffs, as brokers, to procure the royalties for him at an increased price per acre and to retain as compensation the difference between the increased price and the price they had to pay therefor, and thereupon plaintiffs procured a deed to the royalties for the price defendant originally agreed to pay, notes given by defendant to the brokers for the difference between that price and the increased price agreed on were amply sustained by consideration.

**3. Trial ⬠365(2)—Special issue held not misleading, though involved.**

A special issue as to whether plaintiffs had agreed to accept a smaller compensation for their services *held* not misleading when construed with other special issues, though it was somewhat involved.

**4. Brokers ⬠65(1)—Misstatement of opinion is not fraud.**

A statement by brokers that defendant would procure by a deed to oil royalties the royalties on back production, which was evidently only an opinion as to the legal effect of the deed, of which the defendant would know as much as the brokers, was not a fraudulent misrepresentation, even if incorrect.

**5. Brokers ⬠65(1)—Principal held not entitled to defeat recovery of compensation on ground of brokers' misrepresentations.**

A principal cannot defeat recovery of compensation by his brokers for procuring oil royalties for him on the ground that the brokers misrepresented to him that, if he kept quiet, he would secure the royalties on back production, where the contract and deed were prepared by his attorneys in his presence, but in absence of the brokers, since he could not rely on a purpose to obtain a surreptitious advantage, and the omission of a provision covering the back production was his fault, and not the brokers'.

**6. Brokers ⬠65(1)—Not under duty to purchase for less than principal agreed to pay.**

Where the principal agreed to pay a specified price for oil royalties to his brokers, who were to have the difference between that price and the price at which they could purchase the royalties, they owed no duty to purchase for less than the agreed price even if able to.

**7. Brokers ⬠88(14)—Finding brokers did not know land could be procured cheaper negatives fraud in misrepresenting it could not.**

A statement by brokers to their principal that the land could not be procured any cheaper than the price the principal agreed to pay was not fraud depriving them of their right to have their agreed compensation of the difference between that price and the price they did pay for the land, where the jury found that at the time they made the statement brokers did not know the land could be procured at a price less than stated.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Suit by C. W. Alexander and another against C. H. Grollman. Judgment for the plaintiffs, and defendant appeals. Affirmed.

Victors & Campbell, of Lubbock, for appellant.

Percy Spencer, of Lubbock, for appellees.

HUFF, C. J. C. W. Alexander and James P. Posey, appellees, as plaintiffs below, instituted this action against C. H. Grollman,

appellant, as defendant, on three notes, each dated January 7, 1920, one for $750, due 30 days after date, one for $1,000, due 60 days after date, and one for $1,250, due 90 days after date. It is alleged that each of the notes are due and unpaid except a credit on the first note bearing date March 1, 1920, for the sum of $245.83. The suit was also for interest from maturity at the rate of 10 per cent. per annum and 10 per cent. attorney's fees.

By answer the appellant admitted the execution of the notes and liability thereon except as they are or should be defeated for the reasons thereinafter stated:

(1.) It is averred that on January 7, 1920, the appellant was desirous of consummating a contract of purchase of 50 acres of oil royalty in Eastland county, Tex., from one J. L. Hawkins, for the sum of $500 per acre; that prior to January 7, 1920, he had a written contract for purchase with Hawkins and had instituted suit for specific performance in the district court of Lubbock county, Tex.; that the case was reached for trial January 6, 1920, but was postponed until a future day of the court for trial; that appellees knew of this proceeding and sought appellant for employment and to negotiate and consummate the purchase from Hawkins and obtain settlement of the suit; that an agreement was effected substantially that appellees should receive as their commission the sum of $25 per acre, or a total sum of $1,250, for such services; that they were so employed and were in duty bound required to render faithful services in the purchase of the 50 acres; that they did not render faithful services and in fact rendered no services; that appellant had a good cause of action against Hawkins which he could and would have enforced by a decree of court; that Hawkins was ready and willing to close the contract as per the written contract between them; that the appellees knew thereof at and before they approached appellant for employment; they knew that Hawkins was ready and willing to comply with his contract, and that they suggested to Hawkins that they would bring about a settlement with appellant; thus knowing, appellees, for the purpose of extorting a fee, procured the contract with appellant for services when they knew in fact such services were worthless and were not a consideration in law; they procured such agreement for $1,280 upon the representation that a settlement would be a difficult proposition and that Hawkins was going to contest and fight the case; that they could probably persuade him to close the deal and they would save the appellant a lawsuit, but that appellant would likely have to pay more than $500 per acre for the royalty; that at the time appellees knew Hawkins would close the deal for the sum of $500 per acre appellant did not know the real facts passing between Hawkins and appellees, and just before the deal closed they represented that it would be necessary for him to pay Hawkins $550 per acre; that they could not induce Hawkins to take less; appellant thereupon agreed to pay $550 per acre, but they induced appellees to go to a lawyer's office, where Hawkins finally executed the papers closing the deal, and they were able to close the deal for $500, and that they signed up the papers to that effect; on the next day, January 7th, appellees presented to appellant four notes in their favor, aggregating $3,750, representing they were entitled to that sum, as appellant had agreed to pay the sum of $550 per acre and in addition thereto the $25 per acre as commissions; the notes sued on are the notes representing the services rendered on the consummation of the contract; that they are without consideration for that the services were worthless and not rendered in behalf of the appellant; that appellees knew Hawkins was ready to consummate the sale as to the royalty; that appellees suffered no injury and appellant received no benefit from their services, in that appellees misrepresented the appellant and showed bad faith towards the appellant; that appellant had paid $1,000 on the four notes, which canceled the first note executed for $575, and credited the balance on the other as alleged by appellees; that appellant is entitled to recover the $1,000 and seeks such recovery and to cancel the note sued on; that when he made the payment he did not know of the misrepresentation and bad faith on the part of appellees, etc.

(2) In the alternative it is alleged that $2,500 of the note sued on is without consideration; that by reason of the facts alleged above appellant was only liable to pay appellees the sum of $1,250 for their services in the purchase of the land, which amount appellees agreed to accept; that when the notes were executed the appellees represented they had rendered extraordinary services and had induced Hawkins to accept $500 per acre, and in addition had procured the back production due from the pipe lines, which probably amounted to $2,500, and that appellant had agreed to pay Hawkins $550 in addition to the $25 per acre commission, and by reason of their services in his behalf they had saved him $2,500 at least, and were entitled to that sum in addition to the $1,250, and then presented the notes for $3,750 as above alleged; that he signed the notes on such representation, and that he signed the note in fear of some insult, protesting at the time he was only liable for $1,250, which amount will pay for all the services rendered, and that the additional sum is without consideration; that he only agreed originally to pay $1,250 for their services, and this was for the services rendered, and he seeks to limit the recovery to that sum, less the credit of $1,000 cash paid on the notes.

237 S.W.—38

(3) He sought by cross-action to recover damages for $3,000, alleging practically the same grounds set up in the answer, which asserts failure of consideration, bad faith, and misrepresentation.

The case was submitted to a jury upon special issues. The jury found:

(1) That C. H. Grollman agreed to pay $575 per acre for the Hawkins royalty and to give the appellees for their services in effecting the purchase the difference between said sum of $575 and any less sum per acre that they might be able to induce the said Hawkins to accept.

(2) That the appellees did not know at the time the agreement was made that the royalty could be bought for $500 per acre.

(3) The third special issue is as follows:

"At the time that C. W. Alexander and the defendant, C. H. Grollman, the night of the settlement of the controversy between said Grollman and J. L. Hawkins, did the defendant, C. H. Grollman, at that time agree to pay the plaintiff the sum of $25 and no more as the commission and pay for handling said transaction in the event the purchase was consummated?"

The jury answered "No."

(4) The jury were asked in case they answered issue 3 in the affirmative to find whether Alexander agreed to accept the sum of $25.00 per acre in settlement of his claim for services. This issue was not answered by the jury.

(5) The jury found that C. W. Alexander was representing C. H. Grollman, and not J. L. Hawkins, in the settlement of the lawsuit then pending between them regarding the 50-acre royalty.

Upon the findings of the jury the court rendered judgment for appellees against appellant for the principal, interest, and attorney's fees on the notes sued on, aggregating $3,430.70, and against appellant on his cross-action for damages. The testimony offered by the appellees is sufficient to establish the agreement between them and appellant as found by the jury in their answer to the first issue. The testimony of appellant would have authorized a finding of the contract as claimed by appellant and as requested of the jury in the third and fourth issues, but the jury, as is shown by their answer to those issues, found there was no such contract. All the findings of the jury are sustained by the evidence. The evidence will also justify the finding that there was no misrepresentation made by the appellees to appellant to induce him to enter into the contract of employment to pay them for the services in the amount as found by the jury.

Some time previous to January 7, 1920, Mrs. Grollman, acting for her husband, entered into a contract to purchase the 50-acre royalty in question. This contract seems to have been made by Hawkins' brother. acting as agent. Grollman afterwards brought suit on this contract in Lubbock county against Hawkins, seeking to specifically perform the contract and asserting damages in the sum of $75,000. His testimony is to the effect that he had a good cause of action and thought he certainly would have recovered. Mr. Hawkins, with whom he had entered into the contract, was as positive that he had no cause of action and that he would certainly have recovered, claiming that he had a release signed by Grollman for that contract, which had been executed in consideration that Grollman would procure 50 acres from Mrs. Abernathy out of the same tract. On the 6th day of January, 1920, when the contract between appellees and appellant was entered into, in the district court of Lubbock county, Hawkins had presented his plea of privilege to be sued in Eastland county. The court had overruled that plea, and Hawkins and his attorneys had given notice of appeal; Hawkins contending that he was advised by his attorneys that the court was in error in overruling his plea. It seems in the meantime that Grollman had filed lis pendens in Eastland county, which affected the sale of royalties on the tract of land out of which the 50 acres, which was undivided, was to be conveyed. After adjournment of court on the 6th, it seems that Alexander, of the firm of Alexander & Posey, who were real estate brokers in the town of Lubbock, suggested to Mr. Hawkins that he might be able to procure a compromise and settlement of the suit and conveyance of the property, and it seems that Hawkins signified his willingness to enter into negotiations. Alexander visited Grollman, and Grollman authorized him to deal with Hawkins in the matter; Alexander contending that Grollman said that he would give $575 an acre for the royalty and settle the suit, and that he asked him, "Where do I come in on the deal?" He said: "I am going to expect you to make yours by buying it for less than $575." He again said that Grollman gave him a price of $575 an acre, and "whatever I bought it for less than that I was to have, and that is the way we closed up the deal"; that there was nothing said about 5 per cent. commission nor $25 an acre. He finally bought the land from Hawkins for Grollman for $500 an acre. The testimony of Grollman also is that Alexander told him that in buying the royalty he would, by the deed, get the back royalty, which was then in the hands of the Pipe Line Company. It seems that night the lawyers of the parties drew up the contract, by which the royalty was to be conveyed to Grollman upon his paying $25,000 in installments, and at the same time there was a contract also signed by Hawkins and Grollman, whereby it was agreed that any royalties from the oil and gas produced on the land described in the contract between them of that date and deed of conveyance of the interest in royalty of that date should be held in escrow by the

Magnolia Pipe Line Company until the full amount of the $25,000 consideration was fully paid in cash, and thereupon the royalty should be paid over to Grollman. In drawing this contract Grollman and Hawkins did so by their lawyers. Alexander nor Posey were neither present at the time of the drawing of the contract. Grollman contends he did not get the back royalty in the deed and contract with Hawkins, as the appellees represented he would. The original contract upon which appellant had sued Hawkins required that the consideration, $25,000, be paid in cash. The appellees testified that appellant could not pay the entire consideration in cash or a lump sum and that he wanted it paid by partial payments. This is not denied by appellant but apparently admitted by him. The appellees contend that they were instrumental in inducing Hawkins to accept a contract providing for partial payments.

The appellant by propositions 1 to 4, inclusive, insist the evidence conclusively shows there was no consideration for the note sued on in that the appellees were acting to further their own interest, and not the interest of appellant, that it shows they originally made a contract of 5 per cent., or $25 per acre, for their compensation, which entitled them only to $1,250, and that there was no consideration for the additional sum, and that issue No. 1 should not have been submitted because the evidence did not authorize its submission, and there was no pleading presenting the issue.

[1] Ordinarily a broker or agent cannot act so as to bind his principal or recover for services where he has an adverse interest in himself. But this does not apply where, as in this case, the principal and agent contract that in purchasing the property the agent's compensation should be ascertained by fixing the amount at which the appellant would be willing to pay for the land and the difference between that amount and that which they could induce the owner to take should be their compensation for their services. We see nothing in such contract which would render the contract illegal. The parties were capable of contracting and making their own agreement. Contracts authorizing agents to sell land for a certain sum to be paid the principal, and that the agent's compensation for his services is to receive all over that price, have been generally upheld as legal contracts in this state. Taylor v. Cox, 16 S. W. 1063; Evans v. Gay, 74 S. W. 575; Mechem on Agency, vol. 2, §§ 24, 25. The same general principles apply also to the case of a broker authorized to purchase land. Mechem on Agency, vol. 2, § 2471.

[2] In this case the appellant had not procured the land on his original contract with Hawkins, but had a lawsuit. Manifestly it was to his interest and that of Hawkins to terminate the suit. This they had not done.

Appellees undertook to perform this service. Appellant was willing to pay $575 per acre for the land, according to the jury's finding, and he authorized appellees to obtain it, for less, and stipulated they should have the difference as their compensation. Appellant evidently at that time was willing that appellees should have that amount, and certainly it could make no difference to him whether they or Hawkins received the sum. The consideration for the notes, if this contract was made as found by the jury, is amply sustained.

The jury found there was no contract to pay $25 per acre, as contended by appellant. It follows, we think, from their finding that there is no merit in appellant's contention that there was no consideration for $2,500 of the notes because appellees agreed to perform the services for $1,250.

[3] The fifth and sixth propositions are overruled for the reason we think the court submitted the issue whether the appellant agreed to pay appellees as commission $25 per acre in the event the purchase was consummated, as contended by the appellant. While issue No. 3 is somewhat involved when read in connection with issue No. 4 submitted, the jury would not be misled or confused. The two issues as submitted presented the question involved understandably, and it is not probable any injury resulted.

The seventh proposition presents that the court erred in refusing to submit requested issues inquiring of the jury if the appellees requested appellant not to mention the matter of back royalty and that he would get the accumulated royalty if he kept quiet, and whether he would have signed the notes had he known at that time he would not get the same, and did he rely thereon and believe the same. The appellant here seeks to present the issues sought on the grounds of misrepresentation as inducing the contract. These grounds are not pleaded in the first count of the answer, setting them up as a defense. In the second count he sets up the contract as contended for by him; that is, there was to be paid appellee only $1,250. It is in that count, however, alleged in effect that appellees represented the back royalties would be conveyed by the deed, and that they would amount to $2,500. Appellant testified that he knew the back production was not in the contract, and that appellees told him he would get it in the deed. At the time the settlement contract was drawn up Hawkins made the deed, which was deposited with the contract in escrow. The deed so executed was not introduced in evidence. The evidence shows appellees were not present when the papers were being prepared, but that appellant and his attorney, together with Hawkins and his attorney, prepared the contract and papers. On the next morning appellant signed the note, claiming, however, that he then protested he had not re-

ceived the back production upon the royalty. The facts do not show that the appellant was not to receive the back production under the settlement made by the appellees with Hawkins.

[4] If the appellees advised the appellant to say nothing about the back production and he would obtain the same in the deed to be executed, it was evidently only an opinion as to what the law would convey by the deed, of which appellant would know as much as the appellees.

[5] If the deed, under appellant's arrangement with Hawkins, should convey the back production to appellant, if it did not do so as actually drawn, then it was appellant's fault in not having the deed so drawn. If he sought to obtain the same surreptitiously upon the suggestion of appellee that if he would say nothing about it he would obtain it under the deed, he then shows no representation upon which he had the right to rely, either in fact or good conscience. When he signed the notes, he then knew what the contract and deed stipulated, and he did not then rely upon the representations that he would recover the same. The facts in this case preclude him from setting up such defense. This he evidently understood when he was testifying, as he sought to justify himself in signing the note by claiming some sort of duress inducing him to make the note, but he did not plead duress as defeating recovery on the note. A principal cannot defeat a recovery by his agent in effecting a sale or purchase on the ground that the agent represented he could obtain a contract securing certain rights where he, upon his own volition, draws up or executes a contract which deprived him of such right, especially where he fails to show he sought to obtain a contract therefor and the seller refused to execute such contract. In so far as the evidence shows in this case, appellant obtained a contract satisfactory to him, and, having done so, he will not be permitted to defeat the broker out of the contract value of the services.

[6, 7] We think there was no error in refusing the eighth special charge requested. The charge requested, we think, under the facts of this case, was not applicable. It is not a duty appellees owed the appellant to obtain the land for the least money under the contract of agency. The price for which they purchased the land less than $575 per acre only affected the amount of their compensation. The fraud charged by the answer is that they represented that Hawkins would not take less than $600 or $550 per acre when they knew he would take $500. The jury found appellees did not know that the royalty could be bought for $500 from Hawkins at the time they entered into the contract, and, unless they knew that it could be purchased for less when they represented he wanted

$600 for it, they could not be charged with misrepresentation.

We find no reversible error, and the case will be affirmed.

---

⬤⟱For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes